## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| HILDA LOPEZ, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>REVENTICS LLC,<br><br>          Defendant. | Case No. 1:23-cv-00655<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Hilda Lopez, on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, Reventics LLC, ("Reventics" or "Defendant"):

### INTRODUCTION

1.     On December 15, 2022, Reventics, a healthcare revenue cycle management, headquartered in Colorado, lost control over its computer network and the highly private Sensitive Information stored on the computer network in a data breach by cybercriminals ("Data Breach"). The number of total breach victims is unknown, but on information and belief, the Data Breach has impacted at least thousands of consumers.

2.     On information and belief, the Data Breach began on or around December 15, 2022, when malware was introduced into Defendant's system. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to consumers' personally identifiable information ("PII") and private health information ("PHI"). PII and PHI is collectively referred to as "Sensitive Information".

3.    On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access consumers' Sensitive Information in its computer systems.

4.    On or about February 10, 2023, Reventics finally notified state Attorneys General and many Class Members about the widespread Data Breach ("Breach Notice") which is attached as **Exhibit A**. Reventics waited two months before informing Class Members even though Plaintiff and approximately 250,918 Class Members had their most sensitive personal information accessed, exfiltrated, and stolen,[1] causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack

5.    Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its consumers how many people were impacted, how the breach happened, or why it took the Defendant two months to begin notifying victims that hackers had gained access to highly private Sensitive Information.

6.    Defendant's failure to timely detect and report the Data Breach made its consumers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

7.    Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

---

[1] Data Breach, Health IT Security, https://healthitsecurity.com/news/revenue-cycle-management-company-reports-healthcare-data-breach-impacting-250k (last visited March 10, 2023).

8.     In failing to adequately protect consumers' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former consumers.

9.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.     Plaintiff Hilda Lopez is a Data Breach victim.

11.     Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

12.     Plaintiff, Hilda Lopez, is a natural person and citizen of New York, residing in Yonkers, New York, where she intends to remain. Ms. Lopez is a Data Breach victim, receiving Reventics' Breach Notice on March 6, 2023.

13.     Defendant, Reventics, is a Delaware and Colorado corporation with its principal place of business at 5575 DTC Parkway, Suite 125, Greenwood Village, CO 801110.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; Plaintiff and Defendant are citizens of different states.

15.     Reventics is incorporated in Delaware and maintains its principal place of business
in Colorado at 5575 DTC Parkway, Suite 125, Greenwood Village, CO 80111. Reventics is thus
a Delaware and Colorado citizen.

16.     13. This Court has personal jurisdiction over Reventics because it is a citizen in this
District and maintains its headquarters and principal place of business in this District.

17.     14. Venue is proper because Reventics maintains its headquarters and principal
place of business in this District.

## BACKGROUND FACTS

*Reventics*

18.     On information and belief, Reventics is a corporation headquartered Colorado,
providing revenue cycle management to healthcare providers.  According to its website, Reventics
"bring[s] together the clinical excellence, analytic capabilities, and new age technologies" and
"prioritize[s] our clients over our own organization." [2] Reventics boasts a total revenue of $20
million.[3]

19.     Reventics' revenue cycle services are specialized for healthcare providers who
manage highly sensitive data. Reventics thus must oversee, manage, and protect the Sensitive
Information of its clients' consumers.

20.     On information and belief, these third-party consumers, whose Sensitive
Information was collected by Reventics, do not do any business with Reventics.

21.     After collecting consumer Sensitive Information, Reventics maintains the Sensitive
in its computer systems.

---

[2] About us, Reventics, https://reventics.com/about (last visited March 10, 2023).
[3] Who is Reventics, Zoominfo, https://www.zoominfo.com/c/reventics-inc/373505923 (last
visited March 10, 2023).

22.     In its Privacy Policy, Defendant promises that it "implement[s] measures designed to secure your personal information from accidental loss and from unauthorized access, use, altercation, and disclosure."

23.     Despite recognizing its duty to do so, on information and belief, Reventics has not implemented reasonably cybersecurity safeguards or policies to protect its consumers' Sensitive Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Reventics leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' Sensitive Information.

***Reventics Fails to Safeguard Consumers' Sensitive Information***

24.     Plaintiff is unsure how Reventics got her information but assumes a healthcare provider she received treatment from provided Reventics with her Sensitive Information, including but not limited to her name, date of birth, address, Social Security Number, and health insurance information.

25.     On information and belief, Reventics collects and maintains consumers' Sensitive Information in its computer systems.

26.     In collecting and maintaining the Sensitive Information, Reventics implicitly agrees it will safeguard the data using reasonable means according to its internal policies and federal law.

27.     According to the Breach Notice, Reventics claims to have "detected certain anomalies in its systems, including a cyber-intruder who encrypted and potentially accessed Sensitive Information on Reventic's servers." Exh. A.

28.     In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures

allowed those responsible for the cyberattack to obtain files containing a treasure trove of thousands of Reventics consumers' personal and highly private Sensitive Information.

29.     Despite its duties and alleged commitments to safeguard Sensitive Information, Reventics does not follow industry standard practices in securing consumers' Sensitive Information, as evidenced by the Data Breach.

30.     In response to the Data Breach, Reventics contends that it has or will be working: "diligently with their third-party cybersecurity consultants to further fortify Reventics' systems." Exh. A. Although Reventics fails to expand on what these alleged "further" fortifications and safeguards are, such steps should have been in place before the Data Breach.

31.     Through its Breach Notice, Reventics also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant by reviewing account statements and monitoring credit reports." Exh. A.

32.     On information and belief, Reventics has offered a year of complimentary credit monitoring services to victims and insurance reimbursement during that time, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

33.     Even with a single year of credit monitoring, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

34.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach

and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

35.     On information and belief, Reventics failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***Plaintiff's Experience and Injuries***

36.     Ms. Lopez received Reventics breach notice on or about March 6, 2023. She is unsure why it possesses her information.

37.     But no matter why Reventics possesses Ms. Lopez's Sensitive Information, it has a duty to safeguard her information according to its internal policies and state and federal law.

38.     Reventics deprived Ms. Lopez of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for two months.

39.     Indeed, Plaintiff experienced an increase in spam texts and phone calls since the Data Breach, suggesting that her information has been placed in the hands of cybercriminals.

40.     As a result of the Data Breach and the recommendation of Defendant's Notice Ms. Lopez has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

41.     Ms. Lopez has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Ms. Lopez fears for her personal financial security and

uncertainty over what Sensitive Information exposed in the Data Breach. Ms. Lopez has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

42.    Plaintiff suffered actual injury from the exposure of her Sensitive Information — which violates her rights to privacy.

43.    Ms. Lopez has suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

44.    Ms. Lopez has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

45.    Ms. Lopez has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

46.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

47.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's Sensitive Information secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, date of birth, Social Security number, or driver's license number, without permission, to commit fraud or other crimes.

48.    The types of Sensitive Information compromised and potentially stolen in the Data Breach is highly valuable to identity thieves. The consumers' stolen Sensitive Information can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

49.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

50.    Identity thieves can also use the stolen data to harm Plaintiff and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health- related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

51.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their Sensitive Information is used;

b.    The diminution in value of the Sensitive Information;

c.    The compromise and continuing publication of their Sensitive Information;

d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen Sensitive Information; and

h.    The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in their possession.

52.    Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

53.     The value of Plaintiff's and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

54.     It can take victims years to spot identity or PII and PHI theft, giving criminals plenty of time to use that information for cash.

55.     One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

56.     Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

57.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

58. Defendant disclosed the Sensitive Information of Plaintiff and the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

59. Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, as evidenced by its complete failure to prevent malware in its systems, demonstrates a willful and conscious disregard for privacy, and has exposed the Sensitive Information of Plaintiff and members of the proposed Class to unscrupulous operators, con-artists, and criminals.

60. Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

61. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

62. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.    protect the sensitive consumer information that they keep;

    b.    properly dispose of Sensitive Information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

63. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

64. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

65. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

66.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

67.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [4]

68.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[5]

69.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

  a.  Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

  b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[4] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[5] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

70. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant's Offer of Credit Monitoring is Inadequate***

71.     At present, Reventics has offered a mere twelve-year month of free credit monitoring and one million dollars of insurance reimbursement policy during that time, provided by IDX, to breach victims.

72.     As previously alleged, Plaintiff's and the Class Members' Sensitive Information may exist on the Dark Web and in the public domain for months, or even years, before it is used for ill gains and actions. With only twelve months of monitoring, Plaintiff and Class Members remain unprotected from the real and long-term threats against their personal, sensitive, and private data.

73.     Therefore, the "monitoring" services offered by Reventics are inadequate, and Plaintiff and Class Members have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

75.     Plaintiff sues on behalf of herself and the proposed Class ("Class"), defined as follows:

> **All individuals in the United States who are current and former consumers of Defendant and whose Sensitive Information was accessed without authorization in the Data Breach.**

76.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

77.     Plaintiff reserves the right to amend the class definition.

78.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for suing as representative parties:

79.     **Numerosity**. Plaintiff is representative of the proposed Class, consisting of potentially thousands of members, far too many to join in a single action;

80.     **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

81.     **Typicality.** Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

82.     **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

83.     **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

    a.  Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

d.   Whether Defendant breached contract promises to safeguard Plaintiff and the Class's Sensitive Information;

e.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.   Whether Defendant's Breach Notice was reasonable;

g.   Whether the Data Breach caused Plaintiff's and the Class' injuries;

h.   What the proper damages measure is; and

i.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

84.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

85.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

86.    Plaintiff and members of the Class entrusted their Sensitive Information to Reventics. Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure the Sensitive

Information of Plaintiff and the Class was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

87.     Reventics was under a basic duty to act with reasonable care when it undertook to collect, create, and store Plaintiff's and the Class's Sensitive Information on its computer system, fully aware–as any reasonable entity of its size would be–of the prevalence of data breaches and the resulting harm such a breach would cause. The recognition of Defendant's duty to act reasonably in this context is consistent with, *inter alia*, the Restatement (Second) of Torts § 302B (1965), which recounts a basic principle: an act or omission may be negligent if the actor realizes or should realize it involves an unreasonable risk of harm to another, even if the harm occurs through the criminal acts of a third party.

88.     Defendant knew that the Sensitive Information of Plaintiff and the Class was information that is valuable to identity thieves and other criminals. Defendant also knew of the serious harms that could happen if the Sensitive Information of Plaintiff and the Class was wrongfully disclosed.

89.     By being entrusted by Plaintiff and the Class to safeguard their Sensitive Information, Defendant had a special relationship with Plaintiff and the Class. Plaintiff's and the Class's Sensitive Information was provided to Reventics with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiff and the Class of any security concerns that might call for action by Plaintiff and the Class.

90.     Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Sensitive Information by failing to adopt, implement,

and maintain adequate security measures to safeguard that information, despite failures and intrusions, and allowing unauthorized access to Plaintiff's and the Class's Sensitive Information.

91.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their Sensitive Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the Sensitive Information of Plaintiff and the Class and all resulting damages.

92.    The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Sensitive Information.

93.    As a result of Defendant's failure, the Sensitive Information of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their Sensitive Information was disclosed to third parties without their consent. Plaintiff and Class members also suffered diminution in value of their Sensitive Information in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

94.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

95.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

96.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customer information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's Sensitive Information.

97.     Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

98.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

99.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

100.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

101.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

102.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

103.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

104.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

105.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and

members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

106.    Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

107.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

108.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

109.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Reventics fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

111.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

112.    Defendant owed a duty to Plaintiff and Class Member to keep their Sensitive Information confidential.

113.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

114.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Sensitive Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

115.    Defendant's failure to protect Plaintiff's and Class Members' Sensitive Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

116.    Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

117.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' Sensitive Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

118.    As a proximate result of Defendant's acts and omissions, the private Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and rediclosure without authorization, causing Plaintiff and the Class to suffer damages.

119.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

120.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

121.    Plaintiff, on behalf of herself and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Sensitive Information.

122.    Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**COUNT IV**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

123.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

124.    As a condition of obtaining the care and/or services from Defendant's clients, Plaintiff and the Class entrusted their Sensitive Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

125.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

126.    Defendant breached the implied contracts they made with Plaintiff and the Class by failing to adequately safeguard and protect their Sensitive Information, by failing to delete the information of Plaintiff and the Class when Plaintiff's and the Class's relationship with Defendant's clients ended, and by failing to provide timely and accurate notice to them that their Sensitive Information was compromised as a result of the Data Breach.

127.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

128.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT V**
**Breach of Third-Party Beneficiary Contract**
**(On Behalf of Plaintiff and the Class)**

129.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

130.    Plaintiff brings this claim for breach of third-party beneficiary contract against Reventics in the alternative to Plaintiff's claim for breach of implied contract.

131.    Reventics entered into various contracts with its healthcare provider clients to provide revenue cycle management services to its clients.

132.    These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential medical information that Reventics agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

133.    Reventics knew that if it were to breach these contracts with its healthcare provider clients, the clients' patients, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

134.    Reventics breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' Sensitive Information.

135.    As reasonably foreseeable, Plaintiff and the Class were harmed by Reventics' failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

136.    Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## COUNT VI
## Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

137.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

138.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

139.    Plaintiff and Class Members conferred a monetary benefit on Defendant when Defendant's clients provided Plaintiff's and Class Members' Sensitive Information to Defendant, which Defendant collected.

140.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

141.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

142.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

143.    Defendant acquired the monetary benefit and Sensitive Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

144.    If Plaintiff and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to have their Sensitive Information provided to Defendant.

145.    Plaintiff and Class Members have no adequate remedy at law.

146.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the

28

opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

147.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

148.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## COUNT VII
### Violation of Colorado Consumer Protection Act
### (On Behalf of Plaintiff and the Class)

149.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

150.    Defendant is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq*.

151.    Plaintiff and the Class provided and/or entrusted confidential Sensitive Information to Defendant, which Defendant collected, stored, and maintained at its Colorado headquarters.

152.    Defendant is engaged in, and its acts and omissions affect, trade and commerce. Defendant's relevant acts, practices and omissions complained of in this action were done in the course of Defendant's business of marketing, offering for sale, and selling goods and services throughout the United States.

153.    In the conduct of its business, trade, and commerce, Defendant engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the provision or sale of services to consumers. Plaintiff and other members of the Class furnished or purchased these services. Plaintiff and the Class are actual or potential consumers as defined by Colo. Rev. Stat § 6-1-113(1), *et seq*.

154.    In the conduct of its business, trade, and commerce, Defendant collected and stored highly personal and private information, including Sensitive Information belonging to Plaintiff and the Class.

155.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the Sensitive Information of Plaintiff and the Class and that the risk of a data breach was highly likely and/or that the risk of the data breach being more extensive than originally disclosed was highly likely.

156.    Defendant should have disclosed this information regarding its computer systems and data security practices because Defendant was in a superior position to know the true facts related to their security practices, and Plaintiff and the Class could not reasonably be expected to learn or discover the true facts.

157.    As alleged herein this Complaint, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and the furnishing of debt collection and payment services to consumers in violation of the Colorado Consumer Protection Act, including but not limited to the following:

    a.   failing to adequately secure consumer's names and Social Security numbers;

    b.   failing to maintain adequate computer systems and data security practices to safeguard consumer's Sensitive Information;

    c.   failing to disclose the material information, known at the time of the transaction – collection and retention of consumer Sensitive Information– that its computer systems would not adequately protect and safeguard consumer Sensitive Information;

    d.   inducing consumers to use Defendant's services by failing to disclose, and misrepresenting the material fact that Defendant's computer systems and data security practices were inadequate to safeguard its consumers' Sensitive Information from theft.

158.    By engaging in the conduct delineated above, Defendant has violated the Colorado Consumer Protection Act by, among other things:

    a.   omitting material facts regarding the goods and services sold;

    b.   omitting material facts regarding the security of the transactions between Defendant and consumers;

    c.   omitting material facts regarding the security of the transactions between Defendant and consumers who furnished or entrusted their Sensitive Information;

    d.   misrepresenting material facts in the furnishing or sale of products, goods or services to consumers;

    e.   engaging in conduct that is likely to mislead consumers acting reasonably under the circumstances;

    f.   engaging in conduct which creates a likelihood of confusion or of misunderstanding;

    g.   engaging in conduct with the intent to induce consumers to use Defendant's service;

    h.   unfair practices that caused or were likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers; and/or

    i.   other unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices to be shown at trial.

159.    Defendant systemically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and the Class.

160.    Defendant's actions in engaging in the conduct delineated above were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Class.

161.    As a direct result of Defendant's violation of the Colorado Consumer Protection Act, Plaintiff and the Nationwide Class have suffered actual damages, including but not limited to: (i) the loss of the opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use

of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect that Sensitive Information; and (viii) present and future costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

162. As a result of Defendant's violation of the Colorado Consumer Protection Action, Plaintiff and the Nationwide Class are entitled to, and seek, injunctive relief, including, but not limited to:

a. Ordering that Defendant engage third-party security auditors/penetration testers as well as experienced and qualified internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and experienced and qualified internal security personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train its security personnel regarding new or modified procedures;

d.   Ordering that Defendant's segment data by, among other things, creating firewalls and access controls so that if one area of Defendant is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.   Ordering that Defendant purge, delete, and destroy in a reasonably secure manner consumers' data not necessary for its provision of services;

f.   Ordering that Defendant conduct regular database scanning and securing checks;

g.   Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and,

h.   Ordering Defendant to meaningfully educate its employees and consumers about the threats they face as a result of the loss of their Sensitive Information to third parties, as well as the steps consumers must take to protect themselves.

163.   As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices of Defendant alleged herein, Plaintiff and putative class members seek relief under Colo. Rev. Stat. § 6-1-113, including, but not limited to, the greater of actual damages, statutory damages, or treble damages for bad faith conduct, injunctive relief, attorneys' fees and costs, as allowable by law.

## COUNT VIII
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

164.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

165.   Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

166.    Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

167.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Sensitive Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Sensitive Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

168.    Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demand that this matter be tried before a jury.

Date: March 14, 2023

TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
Raina C. Borrelli
Samuel J. Strauss
raina@turkestrauss.com
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiff and Proposed Class*